TODD W. BURNS (SBN 194937)
todd@burnsandcohan.com
Burns & Cohan, Attorneys at Law
444 West C Street, Suite 410
San Diego, California 92101
Telephone: (619) 236-0244
Facsimile: (619) 768-0333

Attorneys for Mr. Wells

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 12-120-CJC |
| Plaintiff, | |
| vs. | DEFENDANT WELLS'S SENTENCING MEMORANDUM |
| | Date: June 26, 2013 |
| ERIC LAMAR WELLS (1), | Time: 9:00 a.m. |
| Defendant. | Hon. Cormac J. Carney, Presiding |

## I.

## INTRODUCTION

For the reasons given in his objections to the presentence report ("PSR") and below, Defendant Eric Wells requests that the Court sentence him to seven years custody, no fine, a $100 special assessment, and an eight-year period of supervised release.

//

//

//

## II.

## GUIDELINES CALCULATIONS

Pursuant to the plea agreement, the parties have agreed to the following sentencing guidelines offense level calculations:

| | | |
|---|---|---|
| Base offense level: | 28 | U.S.S.G. §2G1.3(a)(3) |
| Use of a computer: | +2 | U.S.S.G. §2G1.3(b)(3)(B) |
| Commission of a sex act: | +2 | U.S.S.G. §2G1.3(b)(4) |
| Grouping/multiple victims: | +2 | U.S.S.G. §2G1.3(d)(1) |
| Acceptance of responsibility: | -3 | U.S.S.G. §3E1.1 |
| Adjusted offense level: | 31 | |

As indicated in the PSR, Mr. Wells is in criminal history category III. For offense level 31, that yields a sentencing guideline range of 135-168 months. Pursuant to the plea agreement, the government has recommended a sentence of ten years, and has filed sentencing papers to justify that "outside the guidelines" sentencing recommendation.

Notably, the plea agreement prohibits the parties from requesting that the Court adjust or depart from the guidelines other than as set out above. However, the parties may "correct any and all factual misstatements relating to the Court's sentencing guidelines calculations and determination of the sentence . . . ." And the parties may argue for a sentence outside the applicable guidelines range based on factors set out in 18 U.S.C. §3553(a).

With those understandings in mind, there is a point that bears addressing with respect to the guidelines discussion in the PSR. Paragraph thirty-seven of the PSR states, "U.S.S.G. §2G1.3(b)(3)(B) provides for a two-level increase if the offense involved the use of a computer to offer or solicit a person to engage in prohibited sexual conduct with a minor. In this case Wells used a computer to post online advertisements for the minor victim's prostitution services on an internet website." The guidelines commentary relating to U.S.S.G. §2G1.3(b)(3)(B) states that

1  "[s]ubsection (b)(3) is intended to apply only to use of a computer or an interactive
2  computer service to communicate directly with a minor or a person who exercises
3  custody, care, or supervisory control of the minor."  U.S.S.G. §2G1.3, commentary
4  n. 4.  Neither Mr. Wells nor his co-defendant, Tonisha Moore, used a computer to
5  communicate with the minors involved in this case; instead, Mr. Wells met the two
6  girls while they were soliciting prostitution business on the streets of Las Vegas.
7  Accordingly, to the extent that application of §2G1.3(b)(3)(B) provides a misleading
8  perception of the facts, that is being corrected here.

9      (Incidentally, in the Seventh Circuit, it would be improper to apply
10  §2G1.3(b)(3)(B) to the facts of this case.  *See United States v. Patterson*, 576 F.3d
11  431, 443 (7th Cir. 2009) (relying on commentary and holding that  §2G1.3(b)(3)(B)
12  only applies if defendant used computer to communicate directly with minor or
13  minor's custodian).  The propriety of applying that provision under the circumstances
14  presented here is an open question in the Ninth Circuit.  *See United States v. Jackson*,
15  697 F.3d 1141, 1146 (9th Cir. 2012) ("We need not decide whether the plain language
16  of . . . §2G1.3(b)(3)(B) is in fact inconsistent with the Application Note that follows
17  the Guidelines, as this case can be decided on narrower grounds").  Thus, Mr. Wells
18  could appropriately agree to application of §2G1.3(b)(3)(B) as part of his plea
19  agreement.  But it is worth noting that if §2G1.3(b)(3)(B) did not apply here, then the
20  guidelines range would be 108-135 months, and the ten-year sentence recommended
21  by the government would not be outside the guidelines range.)

22                                **III.**
23                  **SENTENCING RECOMMENDATION**
24  **A.    Introduction**

25      As the Court is aware, the sentencing guidelines are only advisory, and in
26  crafting a sentence the Court must consider the factors set out in 18 U.S.C. §3553(a).
27  Three of those factors are particularly important to arriving at a just sentence in this
28  case:  the history and characteristics of Mr. Wells; the nature and circumstances of the

1    offense; and the need to provide Mr. Wells with appropriate rehabilitative treatment.

2    Those factors are discussed below.

3    **B.    History And Characteristics Of Mr. Wells**

4          Eric Wells is twenty-five years old.  His parents divorced when he was seven,

5    and Mr. Wells was raised by his mother, Wanda.  Though Mr. Wells and his mother

6    lament the absence of his father, Ms. Wells did her best and, as indicated in the letters

7    to the Court that are attached hereto, she raised a young man who is kind and

8    generous.

9          And though his upbringing was not easy, Mr. Wells kept himself out of trouble

10   and did reasonably well as a young man.  He started working when he was in high

11   school in Stockton, and at age nineteen he took a job as a telemarketer in Sacramento

12   and enrolled in classes at Sacramento City College.  After he lost his job, Mr. Wells

13   moved home to live with his mother in Stockton, and began taking classes at Delta

14   Community College.  There, in early 2009, he met his co-defendant, Tonisha Moore.

15   As the two of them began using cocaine together, Mr. Wells's life spiraled out of

16   control – indeed, all of his criminal history occurred after he and Ms. Moore began

17   using cocaine together.  As Mr. Wells will readily admit, he made choices during that

18   time period about which he is ashamed, and he lost sight, to some degree, of who he

19   was.  But one thing that stands out in the letters attached hereto is that he remained

20   a loving, if imperfect, father to his children.

21         In her letter to the Court (Exhibit A), Wanda Wells describes her son as a "kind

22   and generous heart," a person who "looks out for family and friends," and even shows

23   concern for complete strangers.  She mentions with pride how Mr. Wells would do

24   things to help homeless people.  She also emphasizes that though Mr. Wells did not

25   have a father figure in his life, he has been extremely supportive of, and close to, his

26   two children.  Ms. Wells provided photographs of Mr. Wells with his kids, and the

27   kids in a family Christmas photograph (Exhibit B).

28   //

In another letter to the Court (Exhibit C), Rachel Bridges, the mother of Mr. Wells's five-year-old son, Jaelen, writes about Mr. Wells's close relationship with Jaelen. She notes that even through his struggles with drugs, Mr. Wells made sure that he spent quality time with Jaelen, helped raise him, and made sure his needs were met. Ms. Bridges describes Mr. Wells as a kind, warm, and generous man, whose "heart is full of love" and "genuine concern and care for others." She notes that while she and Mr. Wells are not a couple, they "have always been able to communicate and maintain a respectful relationship when it comes to parenting [their] son."

In her letter to the Court (Exhibit D), Kimberly Robinson describes Mr. Wells as a "kind, giving, and loving person." She writes that Mr. Wells helped her with raising her children, and that she is proud of the type of father he has become.

In another letter (Exhibit E), Andrea Brown, Mr. Wells's cousin, writes that she grew up with Mr. Wells, and he took care of her when the two were kids: "he made sure I had breakfast on the table and orange juice in my cup every morning." She notes that being a family caretaker is part of who Mr. Wells is, and she writes about how much he loves his kids.

In his own letter to the Court (Exhibit F), Mr. Wells explains how he began using cocaine after he met his co-defendant, Tonisha Moore, in 2009, and his drug addiction caused him to lose sight of who he was and what was important to him. He writes that his time in custody has allowed him to clear his head of drugs, understand the shamefulness of his actions, and begin to take steps to improve himself as a human being.

Mr. Wells has shown that those are not empty words. A letter from Daniel Achatz (Exhibit G), a counselor at the Santa Ana City Jail, says that Mr. Wells has been meeting with him weekly while in custody, and that "Eric to date appears to show great interest and motivation towards self-improvement." A letter from Patricia Coyle (Exhibit H), an educational instructor at the jail, mentions that Mr. Wells has completed nearly 100 hours of class time in the subjects she teaches, he has "a

positive attitude in both classes, and he always completes his work in a timely manner." In addition, Mr. Wells recently completed the necessary work and obtained his GED, with scores in the 99th percentile for Language Arts/Reading and the 90th perecentile for Social Studies (Exhibit I). And a letter from another instructor at the jai, Michael Cooke (Exhibit J), indicates that Mr. Wells is working toward completing his high school diploma requirements, and is taking other classes in an effort to "acquir[e] the skills that he can use to become a more productive individual in the future. He is taking an interest in his education and is striving to improve himself."

As these letters demonstrate, for much of his life Mr. Wells has shown himself to be a kind and decent person, and he is motivated to make his time in custody productive, to improve himself, and to atone for his mistakes.

**C.   Offense Conduct**

The offense conduct was dealt with at length in Mr. Wells's objections to the PSR, and that discussion will not be reiterated here. But there are a few points that bear emphasis and that set this case apart from what might be considered the "mine run" case involving a violation of 18 U.S.C. §2423(a).

First, Mr. Wells did not entice the minors involved in this case into prostitution. Instead, both were heavily involved in prostitution when they met Mr. Wells. Indeed, they both had been robbing "johns" in Las Vegas, and were both soliciting prostitution business at the moment they met Mr. Wells.

Second, Mr. Wells did not encourage the minors to come with him and Ms. Moore to Arizona, nor anywhere else. Instead, the girls seemed to hit it off with Ms. Moore and asked to come along.

Third, Mr. Wells did not do anything coercive, much less violent, toward the girls. In fact, as indicated in the girls' statements, Mr. Wells in many respects played an almost a passive role.

//

//

-6-

1 Finally, Mr. Wells did not know the girls were minors until the group had
2 arrived in California and an argument broke out between the girls. At that point, Mr.
3 Wells did nothing to stop Minor #1 from leaving.

4 These points are not meant to suggest that Mr. Wells behaved admirably. The
5 point is that Mr. Wells's conduct was perhaps the least aggravated type of conduct
6 that one could engage in and violate 18 U.S.C. §2423(a). This supports his request
7 for a below guidelines sentence in this case.

8 **D.    Need For Rehabilitative Treatment**

9 The final key concern in imposing sentence is that Mr. Wells be provided with
10 the appropriate rehabilitative treatment. Given his drug problem, Mr. Wells asks that
11 the Court recommend that he be placed in the Bureau of Prisons' Residential Drug
12 Abuse Program ("RDAP").

13 **E.    Requested Sentence**

14 For the reasons given in his objections to the presentence report ("PSR") and
15 below, Mr. Wells requests that the Court sentence him to seven years custody, no
16 fine, a $100 special assessment, and an eight-year period of supervised release. He
17 also requests that the Court recommend the RDAP program and placement in a prison
18 in California so that Mr. Wells will be relatively close to his family members,
19 including his children.

20 **IV.**
21 **CONCLUSION**

22 Mr. Wells requests that the Court impose sentence consistent with what is set
23 out above and in his objections to the PSR.

24 Respectfully submitted,

25

26 DATED: June 12, 2013            */s/ Todd W. Burns*
27                                 TODD W. BURNS
                                   Counsel for Mr. Wells

28

1

## CERTIFICATE OF SERVICE

2          Counsel for Defendant certifies that the foregoing pleading is true and accurate

3   to the best of information and belief, and that a copy of the foregoing document has

4   been caused to be delivered this day upon counsel for the Plaintiff in this case, Mark

5   Takla, via ECF/NEF.

6

7   Dated: June 12, 2013                    */s/ Todd W. Burns*
                                            Attorney for Mr. Wells
8                                           444 West C Street, Suite 410
                                            San Diego, California, 92101
9                                           Phone: 619-236-0344
                                            Fax:  619-768-0333
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28